### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

------------------------------------------------------------ x
    :
In re:    :    Chapter 11
    :
FAT BRANDS INC., *et al.*,    :    Case No. 26-90126 (ARP)
    :
Debtors.[1]    :    (Jointly Administered)
    :
------------------------------------------------------------ x

### STIPULATED MEDIATION ORDER
### <u>APPOINTING JUDGE MARVIN ISGUR AS MEDIATOR</u>

**WHEREAS**, on January 26, 2026 (the "***Petition Date***"), FAT Brands Inc. and its debtor affiliates (collectively, the "***Debtors***") each commenced with the Court a voluntary case under chapter 11 of title 11 of the United States Code (the "***Chapter 11 Cases***"). The Debtors requested that the Chapter 11 Cases be jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "***Court***");

**WHEREAS**, on the Petition Date, the Debtors filed the *Emergency Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to Use Cash Collateral; (II) Granting Adequate Protection for the Use of Cash Collateral; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* (Docket No. 18) (the "***Cash Collateral Motion***") in which the Debtors requested an order allowing the use of cash collateral in accordance with the four-week budget attached to the Cash Collateral Motion as <u>Exhibit A</u> and related interim relief to enable continued

---

[1]    A complete list of the Debtors in the Chapter 11 Cases and the last four digits of each Debtor's taxpayer identification number (if applicable) may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/FATBrands. The Debtors' mailing address for purposes of the Chapter 11 Cases is 9720 Wilshire Blvd., Suite 500, Beverly Hills, CA 90212.

day-to-day operations of the Debtors and preserve the value of the Debtors' estates while they undertake the mediation process contemplated hereby;

**WHEREAS**, the ad hoc group of securitization noteholders (the "***WBS Ad Hoc Group***" and, together with the Debtors, and any other parties subsequently joined, each, a "***Party***" and, collectively, the "***Parties***") of certain holders of the Debtors' fixed-rate securitization notes issued by FAT Brands Royalty I, LLC (the "***Royalty Notes***"), FAT Brands GFG Royalty I, LLC (the "***GFG Notes***"), FAT Brands Fazoli's Native I, LLC (the "***Fazoli's Notes***"), and Twin Hospitality I, LLC (the "***Twin Notes***") filed a motion to appoint a chapter 11 trustee (Docket No. 63) (the "***Trustee Motion***");

**WHEREAS**, the Debtors and the WBS Ad Hoc Group have each agreed that mediation may be an efficient and effective mechanism to consensually resolve issues relating to the Chapter 11 Cases, including the Cash Collateral Motion and the Trustee Motion, among other things, and have agreed to this proposed order (this "***Order***"); and

**WHEREAS**, the WBS Ad Hoc Group represents that its members hold a majority of the outstanding Royalty Notes, a majority of the outstanding GFG Notes, a majority of the outstanding Fazoli's Notes, and a majority of the outstanding Twin Notes.

Therefore, upon the request and agreement of the Parties, it is **HEREBY ORDERED** that:

1.      The Parties shall participate before Judge Isgur (the "***Mediator***") (i) in non-binding mediation beginning with a pre-mediation conference as soon as reasonably practicable for the Parties and the Mediator and (ii) at such other conferences as deemed appropriate by the Mediator to attempt to resolve any issues between or among the Parties, including, without limitation, with respect to the terms of a consensual restructuring, the use of cash collateral, additional case funding, the Trustee Motion, and any other disputed issues in the Chapter 11 Cases (together,

2

the "*Mediation*").   The Mediation shall terminate on the earlier of (i) the date on which the Mediator determines that the Mediation has terminated (and advises the Parties of such determination) and (ii) February 19, 2026 (unless such date is extended by (a) agreement of each of the each of the Parties and the Mediator or (b) the Court) (the "*Mediation Termination Date*"). Any Party shall have the right to withdraw from the Mediation at any time by providing written notice (which may be by email) to the Mediator and all Parties; *provided* that such a withdrawal shall not give rise to a Disclosure Triggering Event (as defined below) except in the case of withdrawal by the Debtors or the WBS Ad Hoc Group.   In light of the timing exigencies, the Parties will work in good faith to engage in and complete the Mediation as soon as practicable and prior to the Mediation Termination Date.

2.       One or more principals for, as well as lead counsel for, each Party shall attend the Mediation and such other conferences as the Mediator deems appropriate.  The Special Committee members shall also attend the Mediation and such other conferences as the Mediator deems appropriate.  The Mediator also retains the right to order that a specific principal or principals be present at the Mediation, including, as the Mediator determines to be appropriate, members of the Debtors' special committee, chief restructuring officer, or other required personnel.  Co-counsel and advisors, as well as UMB Bank, N.A., as trustee and securities intermediary to the Debtors' securitization notes, may also participate in the Mediation.  Other parties in interest may participate in relevant portions of the Mediation at the discretion of the Mediator to the extent issues arise in the Mediation that require their input.  Upon the agreement of the Parties or as the Mediator may deem appropriate, additional parties in interest may be joined as Parties to this Order following its entry whereupon such party shall be deemed a Party for all purposes hereunder.  Any persons or

parties in interests attending the Mediation or other conferences as the Mediator deems appropriate shall be a "*Participant*."

3.      Subject to paragraph 2 of this Order, each Party shall attend the Mediation with a principal, or principals, that has settlement authority (subject to applicable governing body approvals); *provided* that, in the case of the WBS Ad Hoc Group, such settlement authority shall be subject to appropriate internal approvals and/or the terms of the relevant indenture.  For the avoidance of doubt, the settlement authority of the WBS Ad Hoc Group shall extend only to itself and its members and no other lender or creditor.

4.      The Mediator is authorized to mediate such issues between the Parties as he determines appropriate in this case.

5.      Subject to paragraph 1 of this Order, the Mediator has absolute discretion as to the timing, means, and methods of the Mediation; *provided* that the Mediation shall be confidential and non-binding.

6.      The Mediator will mediate this case in his capacity as a United States Bankruptcy Judge.  He will have full, unqualified judicial immunity in his role as a mediator.

7.      The Mediator may not be called as a witness in the Chapter 11 Cases or any other proceeding concerning his role as a mediator in the Chapter 11 Cases or concerning the Chapter 11 Cases.

8.      Each Party shall bear its own costs and expenses incurred in connection with the Mediation.

9.      The Parties and their respective counsel shall participate in the Mediation in good faith and comply with all directions issued by the Mediator.

4

10.     Subject to paragraph 14 of this Order, all communications made by and all submissions prepared by any Party or Participant in connection with the Mediation, including, but not limited to, discussions or communications with or in the presence of the Mediator, communications between or among the participants in the Mediation during the course of the Mediation, and all settlement proposals, counterproposals, and offers of compromise made during the Mediation shall (i) be subject to protection under Rule 408 of the Federal Rules of Evidence and any equivalent or comparable state law, (ii) not be submitted or offered as evidence to any court, including in any pleading or other submission to any court, (iii) be protected from discovery in the Chapter 11 Cases or any other proceeding, and (iv) be subject to applicable confidentiality obligations governing the disclosure of confidential information, including those set forth herein and in the *Procedures for Complex Cases in the Southern District of Texas*.

11.     Subject to paragraph 14 of this Order, all communications, information, and evidence exchanged within the Mediation, including, (i) discussions among the Parties and Participants, including discussions with or in the presence of the Mediator before or after the entry into this Order, (ii) any Mediation statements or any other documents or information provided to the Mediator or exchanged among the Parties and Participants in the course of the Mediation, and (iii) correspondence, draft resolutions, offers, and counteroffers produced for, or as a result of, or during the Mediation, shall be strictly confidential and shall remain confidential following the Mediation's conclusion, and shall not be used for any purpose other than the Mediation.  To the extent any information or evidence disclosed within the course of Mediation is privileged, its disclosure amongst the Parties and Participants in the Mediation and to the Mediator does not waive or adversely affect the privileged nature of such information or evidence.  Any communications and submissions in connection with the Mediation may be designated "for

5

advisors' eyes only" (or other similar designation) without prejudice to the rights of any Party to object to or challenge such designation. Information otherwise discoverable or admissible in evidence does not become exempt from discovery, or inadmissible in evidence, merely by being used by a Party in the Mediation.

12. The Mediation shall be subject to paragraphs 48–57 of the Procedures for Complex Cases in the Southern District of Texas (effective September 18, 2024); *provided* that, in the event of any conflict between such paragraphs and the terms of this Order, the terms of this Order shall control.

13. No Party shall (i) be deemed to be or become an insider, a temporary insider, a non-statutory insider under bankruptcy law, an agent, or a fiduciary of any of the Debtors, (ii) be deemed to owe any duty to the Debtors or their estates, (iii) undertake any duty to any party in interest, or (iv) be deemed to misappropriate any information of the Debtors or any person that has designated any material as confidential or highly confidential, with respect to each of the foregoing clauses (i) through (iv), as a result of (a) participating in any mediation conference conducted pursuant to this Order, (b) being aware, or being in possession, of any settlement proposal delivered or received by any party in interest or their agents or advisors in connection with a mediation conference conducted pursuant to this Order, or (c) with respect to any mediation conference conducted pursuant to this Order, acting together in a group with other holders of securities issued by the Debtors, as applicable ("***Debtor Party Securities***"); *provided* that nothing herein shall affect any Party's pre-existing fiduciary obligations or compliance with applicable non-bankruptcy law or regulation. No party in interest in these Chapter 11 Cases, including each of the Debtors or any successor to the Debtors, shall have any claim, defense, objection, or cause of action of any nature whatsoever against a Party, including, but not limited to, any objection to a claim, or any other

basis to withhold, subordinate, disallow, or delay payment or issuance of any consideration to a Party on account of a claim based on such Party's trading in Debtor Party Securities by reason of such Party's receipt, as a result of participating in the Mediation, of (x) information with respect to which, at the time of such trading, such Party has no duty of confidentiality under a confidentiality agreement or (y) a settlement proposal, whether or not such settlement proposal is confidential; *provided* that nothing herein shall be deemed to waive any claims for non-compliance with this Order or any other contractual confidentiality obligations.

14.     To account for the involvement of publicly traded securities, the following disclosures will be made regarding the conduct of the Mediation.  Upon the earliest to occur of (i) the Mediation Termination Date, (ii) the Mediator declaring in writing (which may be by email to all Parties) that the Mediation has been successful, terminated, or suspended, and (iii) the Debtors or the WBS Ad Hoc Group withdrawing from Mediation (which withdrawal must be made in writing, email being acceptable, and communicated to all Parties and the Mediator) (each of (i) through (iii), a "*Disclosure Triggering Event*"), the Debtors shall, within three (3) business days following such Disclosure Triggering Event (the "*Cleansing Deadline*"), disclose to the public by filing a Form 8-K (or any periodic report required or permitted to be filed under the Securities Exchange Act of 1934) with the U.S. Securities and Exchange Commission ("*SEC*") or, if the SEC's EDGAR filing system is not available, through public dissemination of a press release the following information:   (a) the fact that Mediation occurred among the Parties and other participants, *provided* that the WBS Ad Hoc Group may be identified as such without the identities of the individual holders but with the aggregate amount of holdings of the Debtor Party Securities beneficially owned or controlled by the WBS Ad Hoc Group; (b) whether negotiations are or are not continuing; (c) if any agreement has been reached among the Parties concerning the terms of

a settlement, a detailed description of the terms; (d) if no agreement has been reached between the Parties concerning the terms of a settlement (1) the fact that such an agreement has not been reached and (2) a description of the last *bona fide* settlement proposal delivered by each of the Parties; and (e) any other confidential information disclosed by the Debtors to the Parties or other participants through the period ending on the Cleansing Deadline, to the extent not theretofore publicly disclosed, the possession of which would, in the reasonable judgment of a Party, after consultation with counsel (which may be in-house counsel), either (A) prohibit a Party or other participant from buying, selling, or trading any of the Debtor Party Securities (pursuant to United States securities laws or applicable blue sky laws) or (B) otherwise constitute material non-public information with respect to the Debtors or the Debtor Party Securities (any such information described in this clause (e), "***MNPI***" and, collectively with the information set forth in clauses (a) through (e), "***Cleansing Material***"); *provided* that for the avoidance of doubt, such Cleansing Material shall not include any settlement proposals made to or by the Mediator.  Upon the disclosure of the Cleansing Material, any confidential information contained therein shall be deemed public and no longer confidential.  For the avoidance of doubt, Cleansing Material will not include any information provided only to advisors of Parties holding Debtor Party Securities, including any settlement proposals that were designated and remained "for advisors' eyes only" (or words of similar import) and were not disclosed to any such holder with the consent the Debtors.  The Debtors shall use commercially reasonable efforts to provide all Parties with a draft of the proposed Cleansing Material twenty-four (24) hours prior to the Cleansing Deadline and shall in good faith incorporate any reasonable comments that any Party submits to the Cleansing Material.  If (x) the Debtors do not provide a draft of the proposed Cleansing Material to a Party pursuant to the foregoing sentence or (y) such Cleansing Material does not, in the reasonable

8

judgment of a Party after consultation with counsel (which may be in-house counsel), disclose all of the Cleansing Material by the Cleansing Deadline, such Party may, within two (2) business days following the Cleansing Deadline provide the Debtors (or their representatives) with a notice of the insufficiency of the Cleansing Materials, together with copies of proposed additional materials to be disclosed, *provided* that a Party may send such a notice within twelve (12) hours prior to the Cleansing Deadline if it has not received a draft of the proposed Cleansing Materials at that time. During the succeeding twenty-four (24) hour period following the receipt of a notice of insufficiency, the Debtors and the noticing Party shall attempt in good faith to resolve such Party's reasonable requests for additions or modifications to the Cleansing Materials.  If no agreement can be reached during such twenty-four (24) hour period, the Party noticing the insufficiency may make generally available to the public additional materials that the Party believes in good faith, after consultation with counsel (which may be in-house counsel), needed to be included in the Cleansing Material in order to clean such Party of MNPI; *provided* that in any event, if the WBS Ad Hoc Group is noticing the insufficiency, the WBS Ad Hoc Group shall provide the Debtors with a copy of such proposed material at least twenty-four (24) hours prior to public disclosure and shall make a reasonable, good faith effort to incorporate the Debtors' reasonable requests for additions or other modifications to the proposed materials.  No Party shall have any liability at law or equity for the disclosure of additional materials made in compliance with the previous sentence and the other provisions of this paragraph, *provided* that such disclosure was not made in bad faith and did not include materials that were designated and remained "for advisors' eyes only" (or words of similar import).

15.     The Debtors are authorized to take all action necessary to effectuate the relief granted in this Order.

16.     The Court retains exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Signed: January 28, 2026

_____
Alfredo R Pérez
United States Bankruptcy Judge

**STIPULATED AND AGREED TO BY:**

*/s/ Timothy A. ("Tad") Davidson II*
**HUNTON ANDREWS KURTH LLP**
Timothy A. ("Tad") Davidson II (TX Bar No. 24012503)
Ashley L. Harper (TX Bar No. 24065272)
Philip M. Guffy (TX Bar No. 24113705)
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone:  (713) 220-4200
Email:  taddavidson@hunton.com
        ashleyharper@hunton.com
        pguffy@hunton.com

– and –

**LATHAM & WATKINS LLP**
Ray C. Schrock (NY Bar No. 4860631)
Natasha Hwangpo (NY Bar No. 5222575)
Randall Carl Weber-Levine (NY Bar No. 5673330)
Ashley Gherlone Pezzi (NY Bar No. 5754213)
Thomas Fafara (NY Bar No. 6013445)
1271 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 906-1200
Email:  ray.schrock@lw.com
        natasha.hwangpo@lw.com
        randall.weber-levine@lw.com
        ashley.pezzi@lw.com
        thomas.fafara@lw.com

– and –

Ted A. Dillman (CA Bar No. 258499)
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone:  (424) 653-5500
Email:  ted.dillman@lw.com

*Proposed Counsel to Debtors*

-and-

*/s/ Charles R. Koster*

**WHITE & CASE LLP**
Charles R. Koster (Texas Bar No. 24128278)
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Email: charles.koster@whitecase.com

- and -


**WHITE & CASE LLP**
Andrew Zatz (*pro hac vice* pending)
Laura J. Garr (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: azatz@whitecase.com
        lgarr@whitecase.com


*Counsel to the WBS Ad Hoc Group
Noteholders*

**WHITE & CASE LLP**
Brian Pfeiffer (*pro hac vice* pending)
Amanda Parra Criste (*pro hac vice*
pending)
200 South Biscayne Boulevard, Suite
4900
Miami, Florida 33131
Telephone: (305) 371-2700
Email: brian.pfeiffer@whitecase.com
        aparracriste@whitecase.com

-  and -


**WHITE & CASE LLP**
Jason N. Zakia (*pro hac vice* pending)
Adam T. Swingle (*pro hac vice* pending)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: jason.zakia@whitecase.com
        adam.swingle@whitecase.com

E