### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FAT BRANDS INC., *et al.*, | ) | Case No. 26-90126 (ARP) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

## THE AD HOC GROUP OF SECURITIZATION NOTEHOLDERS' <u>EMERGENCY</u> MOTION TO COMPEL FROM THE DEBTORS (I) THE PRODUCTION OF ELECTRONIC DISCOVERY; AND (II) THE NOTICED DEPOSITIONS

---

**Emergency relief has been requested, and such relief is respectfully requested not later than 3:00 p.m. (prevailing central time) on Monday, March 2, 2026.**

**To the extent that you have received notice, if you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on Monday, March 2, 2026 at 3:00 p.m. (prevailing central time) in courtroom 400, 515 Rusk, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917 1510. Once connected, you will be asked to enter the conference room number. Judge Alfredo Perez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Perez's home page. Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "electronic appearance" link on Judge Perez's home page. Select the case name, complete the required fields and click "submit" to complete your appearance.**

---

[1]   A complete list of the Debtors in the chapter 11 cases (the "**Chapter 11 Cases**") and the last four digits of each Debtor's taxpayer identification number (if applicable) may be obtained on the website of the Debtors' proposed claims and noticing Debtors at https://omniDebtorssolutions.com/FATBrands. The Debtors' mailing address for purposes of the Chapter 11 Cases is 9720 Wilshire Blvd., Suite 500, Beverly Hills, CA 90212.

The Ad Hoc Group of Securitization Noteholders (the "**Ad Hoc Group**"), submits this motion (the "**Motion**") from the above captioned debtors and debtors in possession (the "**Debtors**"), and respectfully states as follows:[2]

## PRELIMINARY STATEMENT

1.      On January 30, 2026, the Ad Hoc Group served forty-seven document requests on the Debtors tailored to the Debtors' then-contested Cash Collateral Motion and the Ad Hoc Group's Trustee Motion.  The Ad Hoc Group requested, among other categories of information, the Debtors' communications reflecting the misuse of the Ad Hoc Group's cash collateral, insider transfers, and documents supporting statements made in the Debtors' First Day Declaration.  The Debtors initially took the unsupportable position that they would not conduct any email or text message searches.  Only upon threat of court intervention did the Debtors ultimately concede that some extent of electronic discovery was proper.  But the Debtors have now backtracked on that agreement and are now refusing to produce responsive communications unless the Ad Hoc Group agrees to produce emails in response to the sixty-two requests for production of documents that the Debtors served on the Ad Hoc Group.  The Debtors' far-ranging requests, allegedly in connection with the Trustee Motion, include communications concerning each Ad Hoc Group members' "use of private aircraft for business purposes" and other irrelevant information.  To be clear, the Debtors are in possession of nearly all documents relevant to the Trustee Motion and Suspension Motion—motions that exclusively concern the Debtors' mismanagement. The Ad Hoc Group's knowledge of this mismanagement (or their travel habits) has no bearing on whether a

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Ad Hoc Group of Securitizations Noteholders' First Requests for the Production of Documents to the Debtors*, which is attached as Exhibit A to the *Declaration of Ashley Rona Chase In Support of The Ad Hoc Group Of Securitization Noteholders' Emergency Motion To Compel From the Debtors (I) the Production of Electronic Discovery; And (II) The Noticed Depositions* (the "**Chase Decl.**"), filed contemporaneously herewith.

chapter 11 trustee is appropriate.  The Debtors' discovery obligations are not contingent on those of the Ad Hoc Group.

2.      The Debtors have similarly refused to produce any text messages in response to the Ad Hoc Group's document requests, even though the limited documents produced by the Debtors confirm that the Debtors' CEO, Andrew Wiederhorn—who stands at the center of the Trustee Motion and Suspension Motion—conducts business through both email and text messages.  The Debtors argue that, even if there are responsive messages, the burden to collect and produce such messages is too high.  The Debtors have not, however, attempted to quantify or otherwise assess that burden.

3.      The Debtors have also refused to produce Mr. Wiederhorn and a member of the Special Committee, despite the Ad Hoc Group noticing these individual depositions.  These witnesses' roles and authority are central to the Trustee Motion and Suspension Motion and their testimony would be directly relevant to the issues scheduled to be heard on March 11, 2026.

4.      The Debtors' refusal to search for email and text messages and produce key witnesses for deposition is improper, and the Court should compel discovery.

## JURISDICTION, VENUE, AND PREDICATES FOR RELIEF

5.      The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  The Ad Hoc Group confirms their consent to the entry of a final order by the Court.  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

6.      The predicates for the relief requested are sections 105(a) of title 11 of the United States Code, rules 26, 30 and 34 of the Federal Rules of Civil Procedure ("**Federal Rules**"), as made applicable by rules 7026, 7034 and 9014 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**").

## RELIEF REQUESTED

7.      The Ad Hoc Group seeks an order compelling the Debtors to comply with their discovery obligations, including collecting, searching and reviewing custodians' email inboxes and text messages, compelling the Debtors to produce all non-privileged, responsive documents, including emails and text messages responsive to the Ad Hoc Group's Document Requests, making Mr. Wiederhorn and a member of the Special Committee available for deposition, and granting such other relief as the Court finds just and proper.

## FACTUAL BACKGROUND

8.      On January 27, 2026, the Ad Hoc Group filed *The Ad Hoc Group of Securitization Noteholders' Motion for an Order Appointing a Chapter 11 Trustee for the Securitization Debtors* [Docket No. 63] (the "**Trustee Motion**").

9.      On January 30, 2026, the Ad Hoc Group served the *Ad Hoc Group of Securitization Noteholders' First Requests for the Production of Documents to the Debtors* (the "**AHG's Document Requests**"), consisting of forty-seven targeted document requests relating to the Cash Collateral Motion, the Cash Management Motion, and the Trustee Motion. *See* Chase Decl., Ex. A (AHG's Document Requests). The Requests seek information related to, among other things, (i) the Debtors' use/misuse of the Cash Collateral; (ii) the cost and sources used to pay for legal fees, including those of Mr. Wiederhorn; (iii) the Debtors' payments to insiders and related parties, including the prepetition retention bonuses, salary increases, intercompany transfers, and payments to Mr. Wiederhorn and his family; and (iv) the roles, powers, and duties of both the Special Committee and the Chief Restructuring Officer. The AHG's Document Requests requested the Debtors' responses "immediately on a rolling basis, with production to be completed

4

on or before February 13, 2026." *See* Chase Decl., Ex. A at 1.  The Instructions for the Document Requests stated that "[t]he scope of Your search for electronic data that is responsive to any Request shall include all forms of electronic data collection, preservation, transmission, communication and storage, including but not limited to all data generated and maintained in the ordinary course of business stored by You or any third parties on or in," among other sources, "text messaging systems, including iMessage and SMS" and "voicemail and e-mail systems, alternative communication and messaging systems" among others.  *Id.* at 8-9 (Instruction No. 8).

10.     On February 5, 2026, the Ad Hoc Group filed *The Ad Hoc Group of Securitization Noteholders' Emergency Motion for an Order (I) Temporarily Suspending Andrew Wiederhorn as Chief Executive Officer, (II) Vesting Authority in the Debtors' Special Committee, and (III) Granting Related Relief* [Docket No. 182] (the "**Suspension Motion**").  The Suspension Motion requested the temporary suspension of Mr. Wiederhorn from his role as Chief Executive Officer of the Debtors, pending a determination on the Trustee Motion, because Mr. Wiederhorn caused the Debtors to close on a post-petition securities transaction without prior Court approval. *See generally* Suspension Motion.

11.     On February 5, 2026, the Ad Hoc Group served one single document request on the Debtors related to the Suspension Motion.  *See* Chase Decl., Ex. B (AHG's Second Document Requests).  On February 8, 2026, the Debtors produced thirteen documents.  Seven of those documents were emails by and among Mr. Wiederhorn and others and their attachments.  *See Debtors' Witness and Exhibit List* [Docket No. 190] (Exhibits 9-12) (combining emails and attachments).  One document was a screenshot of a text message chain by and among Mr. Wiederhorn and Alan Urynaik.  *See id.* (Exhibit 13).

12.     On February 10, 2026, the Court held an emergency hearing on the Suspension Motion.  At that hearing, the Ad Hoc Group and the Debtors agreed to an interim solution and agreed to address the Suspension Motion and the Trustee Motion together at a hearing on March 3, 2026.[3]

13.     Having heard nothing from the Debtors regarding the AHG's Document Requests for over ten days, on February 11, 2026, counsel to the Ad Hoc Group emailed Debtors' counsel requesting to meet and confer.  *See* Chase Decl., Ex. C at 1 (February 11 W&C Email to LW). The parties set a meet and confer for the afternoon of February 13, 2026.  *See* Chase Decl., Ex. D at 7 (Email Chain between W&C and LW).

14.     On February 12, 2026, the Debtors served the *Debtors' First Requests for the Production of Documents to the Debtors* [sic] (the "**Debtors' Document Requests**").  *See* Chase Decl., Ex. E (Debtors' Document Requests).  The Debtors' Document Requests seek documents responsive to sixty-two separate requests.  *See generally id.*  Several of the requests seek all documents related to each Ad Hoc Group members' internal policies such as Request No. 53 ("All Documents concerning the lease, charter, ownership, or use of any private aircraft by any member of the Ad Hoc Group or any officer, director, or principal thereof during the period from January 1, 2020, to the present"), Request No. 54 ("All Documents concerning expenses incurred by any member of the Ad Hoc Group for private aircraft travel, including invoices, receipts, and records of payments"), and Request No. 55 ("All Documents concerning any policies or practices of members of the Ad Hoc Group regarding the use of private aircraft for business purposes").  *Id.* at 20.

---

[3]     The Trustee Motion and Suspension Motion have been further adjourned to March 11, 2026.

15.     Also on February 12, 2026, the Debtors served the *Debtors' Responses and Objections to the Ad Hoc Group of Securitization Noteholders' First Requests for the Production of Documents to the Debtors* (the "**Debtors' Responses and Objections**").  *See* Chase Decl., Ex. F (Debtors' Responses and Objections).  In the Debtors' Responses and Objections, the Debtors objected to Instruction No. 8 "to the extent that it requires that the Debtors search for electronic data in all forms across many platforms" and stated that "[t]he Debtors will not, for instance, conduct a widespread collection of electronic mail, text messages, or instant messages, but instead will conduct targeted searches, as appropriate, for responsive material." *See id.* at 7.

16.     Contemporaneously with the Debtors' Responses and Objections, the Debtors made their first production of documents in response to the AHG's Document Requests.  That production contained ten documents: six direction letters from Fat Brands, Inc. to UMB Bank, and four publicly filed documents from legal actions against the Debtors.

17.     On February 13, 2026, counsel for the Ad Hoc Group met and conferred with Debtors' counsel on the AHG's Document Requests.  *See* Chase Decl., Ex. D at 7.  During the meet and confer, counsel to the Ad Hoc Group requested a status update on the Debtors' production, noting the lapse of two weeks with little to no documents produced and the rapidly-approaching hearing date.  Debtors' counsel responded that they were searching the Debtors' files for documents responsive to the AHG's Document Requests but stated that they did not intend to run searches across custodians' email and text messages.  According to Debtors' counsel, the Debtors did not expect there to be many responsive documents in emails or text messages.  Counsel to the Ad Hoc Group rejected that limitation and committed to quickly respond to any proposed search terms from the Debtors to ensure expeditious agreement on the scope of electronic

discovery. Debtors' counsel indicated that they would "take that back." During this meet and confer, the parties did not discuss the Debtors' Document Requests.

18.     Not having heard back, later that evening, counsel for the Ad Hoc Group sent an email to Debtors' counsel requesting confirmation as to whether the Debtors would agree to run searches across emails and text messages in response to the AHG's Document Requests. *See* Chase Decl., Ex. D at 5.

19.     Four days later, on February 17, 2026, counsel for the Ad Hoc Group again followed up with Debtors' counsel and informed them that if Debtors' counsel did not agree to perform searches across emails and text messages, counsel for the Ad Hoc Group intended to file a motion to compel. *See id.* at 6.

20.     On February 17, 2026, Debtors' counsel responded. *See id.* at 6. They stated: "We agree to run a set of search terms across emails but not for text messages as they are not used in the ordinary course of business. The likelihood of discovering relevant information is minimal while the burden and intrusion of device collection is substantial." *Id.*

21.     On February 18, 2026, counsel for the Ad Hoc Group responded and requested that the Debtors send proposed custodians and search terms for the Debtors' email searches. *Id.* at 5-6. Counsel for the Ad Hoc Group further reiterated, "We do not agree to your continued refusal to search text messages in response to our January 30 requests. The documents you produced in response to the Suspension Motion request demonstrate that Mr. Wiederhorn conducts business over text messages. You were also able to collect those messages, review them, and produce them within 3 days. It thus seems likely that responsive messages exist and that it is not overly burdensome to conduct a reasonable search over at least Mr. Wiederhorn's texts. You have not provided any basis for your suggestion to the contrary." *Id.* at 6.

22.     On February 19, 2026, the Ad Hoc Group served a Federal Rule 30(b)(6) deposition notice to the Debtors (the "**AHG's 30(b)(6) Notice**"), as well as individual deposition notices to John DiDonato, Neal Goldman, and Mr. Wiederhorn.  *See* Chase Decl., Ex. G (February 19 W&C Email Attaching Deposition Notices).  The Federal Rule 30(b)(6) deposition notice to the Debtors requested testimony on twenty-four topics relating to the Trustee Motion and the Suspension Motion. *See id.* at 10-12.

23.     On February 19, 2026, the Debtors made a document production of 1,245 documents.  The only emails included in this production were prepetition correspondences between Debtors' counsel and counsel for the Ad Hoc Group.

24.     On February 20, 2026, the Debtors produced twenty more documents.  This small production also did not include any emails or text messages.

25.     On February 20, 2026, the Ad Hoc Group served *The Ad Hoc Group of Securitization Noteholders' Responses and Objections to the Debtors' First Request for the Production of Documents* (the "**AHG's Responses and Objections**").  *See* Chase Decl., Ex. H (AHG's Responses and Objections).  The Ad Hoc Group agreed to produce non-privileged documents other than those appended to the *Declaration of Laura J. Garr in Support of the Ad Hoc Group of Securitization Noteholders' (I) Motion for an Order Appointing a Chapter 11 Trustee and (II) Omnibus Objection to the Debtors' Cash Collateral Motion and Cash Management Motion* [Docket No. 65] (the "**Garr Declaration**").  *See generally id.*  The Ad Hoc Group declined to produce documents for the majority of the Debtors' Document Requests primarily on the grounds that (i) the documents that formed the bases for the Trustee Motion and Suspension Motion were (a) appended to the Garr Declaration, (b) public documents, and/or (c) already in the Debtors' possession; or (ii) the Debtors' Document Requests sought documents

not relevant to any claim or defense in the Trustee Motion or the Suspension Motion, and any search for responsive documents would not be proportional to the needs to these contested matters. *See generally id.*

26.     On February 20, 2026, the Debtors served a Federal Rule 30(b)(6) deposition notice to the Ad Hoc Group.  Chase Decl., Ex. I (Debtors' Deposition Notice to the Ad Hoc Group).  The Debtors noticed the deposition of a representative from each of the Ad Hoc Group's members on fifteen topics primarily targeting the members' knowledge or assessment of the Debtors' mismanagement, as well as their own governance and internal policies.  *See generally id.*

27.     On February 21, 2026, counsel for the Ad Hoc Group sent an email to Debtors' counsel noting that Debtors' counsel had not responded to their February 18, 2026 email and had not included "any texts or emails in the productions other than a handful of emails by and among W&C and LW."   Chase Decl., Ex. D at 5.  Counsel for the Ad Hoc Group "ask[ed], for the third time, for [the Debtors] to immediately send the search terms [they] [we]re using to locate documents responsive to [the Ad Hoc Group's] requests" and requested the Debtors' position on the production of text messages in light of the Debtors' production in connection with the Suspension Motion.  *See id.*

28.     On February 22, 2026, Debtors' counsel responded, indicating, for the first time, that "[t]he Debtors' production of emails is conditioned on the Ad Hoc Group's agreement to produce emails as well."  *Id.*  at 4-5.  Debtors' counsel further confirmed their position that "[a]s for text messages, we will not agree to produce them," now claiming that "[t]he costs and process of collecting and reviewing text messages are unduly burdensome and not proportionate to the needs of the case."  *Id.*  The Debtors did not provide any substantiation for this blanket statement or propose any limiters to minimize any such burden.  *See id.*

29.     The parties met and conferred on February 24, 2026. *See id.* at 1-2. Counsel to the Ad Hoc Group noted it was preparing a production of documents from its files in response to certain of the Debtors' Document Requests, but that the majority of the Debtors' requests sought documents that are not relevant to the Trustee Motion or Suspension Motion, privileged materials, and/or information already within the Debtors' possession. *See id.* As such, the Ad Hoc Group would not be conducting electronic searches. *See id.* For the same reasons, counsel to the Ad Hoc Group stated that it would not offer a witness for deposition. *See id.*

30.     During the same meet and confer, the Debtors reiterated that their search for responsive emails was conditioned on the Ad Hoc Group's agreement to conduct a search of its members' emails. *See id.* Regarding the Debtors' depositions, counsel to the Ad Hoc Group noted that it served a notice for Mr. Goldman's deposition but would be open to deposing whichever member of the Special Committee the Debtors chose to offer. *See id.* However, Debtors' counsel stated that they would only offer their Chief Restructuring Officer, Mr. DiDonato, who would testify on the topics in the AHG's 30(b)(6) Notice. *See id.* In other words, despite being noticed by the Ad Hoc Group and key witnesses relevant to the Trustee Motion and Suspension Motion, the Debtors will not agree to make Mr. Wiederhorn or either member of the Special Committee available for deposition.

31.     On February 25, 2026, the Trustee Motion and the Suspension Motion were adjourned to March 11, 2026. *See Notice of Adjournment of the Ad Hoc Group of Securitization Noteholders' Motions* [Docket No. 301]

**ARGUMENT**[4]

I.  **THE COURT SHOULD COMPEL THE DEBTORS TO SEARCH EMAILS AND TEXT MESSAGES FOR RESPONSIVE DOCUMENTS AND PRODUCE MR. WIEDERHORN AND A SPECIAL COMMITTEE MEMBER FOR DEPOSITION**

32.     The Ad Hoc Group is entitled to discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1); *see* Fed. R. Bankr. P. 7026 (incorporating Federal Rule 26).  Federal Rule 26 embodies a broad discovery policy and is liberally construed in favor of disclosure.  *See, e.g.*, *In re LeBlanc*, 559 F. App'x 389, 392 (5th Cir. 2014) (noting that Federal Rule 26(b) "sets the scope of discovery broadly"); *see also Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 820 (5th Cir. 2004) ("Under the federal discovery rules, any party to a civil action is entitled to all information relevant to the subject matter of the action before the court unless such information is privileged."); *In re Trevino*, 564 B.R. 890, 903 (Bankr. S.D. Tex. 2017) ("Rule 26 casts a very wide net as to what is included in the scope of discovery.").

33.     The discovery requested by the Ad Hoc Group falls squarely within the broad ambit of Federal Rule 26.  The AHG's Document Requests seek Documents and Communications relating to, among other things, the Debtors' use of Cash Collateral and Unencumbered Cash, Manager Advances, and the issues relevant to the Trustee Motion, including the roles of and payments made to Mr. Wiederhorn and his family and the Debtors' current governance.  *See* Chase Decl., Ex. A at 13-18.  Further, the depositions of Mr. Wiederhorn and a Special Committee member—the individuals best positioned to testify about Mr. Wiederhorn's conduct and the

---

[4]     The Ad Hoc Group has tentatively reached interim agreements with the Debtors to resolve certain discovery issues not raised herein, but reserves the right to raise any additional issues regarding the Debtors' document production at the appropriate time.

authority and effectiveness of any alleged controls in place—are central to the Trustee Motion and the Suspension Motion.

34.     In response to the AHG's Document Requests, the Debtors have taken the untenable position that they will not produce any text messages and they will only produce emails if the Ad Hoc Group does in response to their retaliatory requests.  *See supra* ¶¶ 28-30.  The Debtors have similarly refused to produce key witnesses for deposition, attempting to shield Mr. Wiederhorn and the Special Committee behind the Debtors' CRO.  *See supra* ¶ 30.  This is improper, and the Court should compel the requested discovery.

> **A.     The Debtors Must Search and Produce Responsive, Non-Privileged Text Messages and Emails and Produce Mr. Wiederhorn and a Special Committee Member for Deposition**

35.     The contested matters at issue concern the Ad Hoc Group's request for a chapter 11 trustee to protect the Debtors' assets from their Chief Executive Officer and controlling shareholder, Mr. Wiederhorn, who has been looting them to support himself and his family, as alleged in the Trustee Motion.  This requires a showing of "cause, including fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor by current management either before or after commencement of the case" or that such appointment is in the best interests of creditors.  11 U.S.C. § 1104(a)(1), (a)(2).  The Debtors intend to contest the Trustee Motion and the Suspension Motion.  The Ad Hoc Group is entitled to discovery relevant to the Debtors' defenses and to probe the veracity of the public materials the Ad Hoc Group cited in support of its motions.  *See* Fed. R. Civ. P. 26(b)(1).

36.     Subject to certain objections, in the Debtors' Responses and Objections, the Debtors agreed to conduct "a reasonable search" to collect and produce non-privileged documents responsive to forty-one of the Ad Hoc Group's Document Requests.  *See* Chase Decl., Ex. F at 8-39.  But their commitment to conduct a "reasonable search" is undercut by their refusal to "conduct

13

a widespread collection of electronic mail, text messages, or instant messages." *See Measured Wealth Priv. Client Grp., LLC v. Foster*, 2021 WL 309033, at *2 (S.D. Fla. Jan. 29, 2021) (ordering forensic examination of party's mobile phone because "Defendant's text messages and iMessages for the [relevant period] are clearly relevant and proportional to the claims and defenses in this case, per Fed.R.Civ.P. 26(b)(1)" and the court was "concerned that not all text messages or iMessages sought by Plaintiff have been produced by Defendant"); *Ranton v. Quest Diagnostics*, 2024 WL 3092024, at *5 (D.N.J. June 21, 2024) (ordering search and production of text messages because "if they exist and are located, the text messages sought would be highly relevant to Plaintiff's claims and would be important evidence in supporting her allegations").

37.     The Debtors' claim that a search of emails and text messages is unlikely to yield responsive documents is belied by their prior document production.  The Debtors produced thirteen documents in response to the Ad Hoc Group's single document request in connection with the Suspension Motion, and of those thirteen documents, eight were emails, email attachments, or text messages.  *See supra* ¶ 11.  Those documents demonstrate that Mr. Wiederhorn conducts business over text messages.  *See id.*  That the Debtors simply "believe," without ever having looked, that there will not be many responsive emails or text messages is not sufficient grounds to forgo a formal email or text message collection process.  *See id.* ¶¶ 17, 20.

38.     Any purported burden of conducting targeted searches across emails and text messages is completely unsupported, as demonstrated by the fact that the Debtors were able to collect those messages, review them, and produce them within three days.[5]  *See supra* ¶ 11.  The

---

[5]     During the February 13, 2026 meet and confer, the Debtors alleged that their delay in beginning their document collection to the AHG's Document Requests was because they were "distracted" by the single document request the Ad Hoc Group served in connection with the Suspension Motion.  Changing their tune, now, the Debtors allege that collecting emails and text messages related to the Suspension Motion was a "discrete" ask.  *See* Chase Decl., Ex. D at 4-5.  The Debtors' consistent flip-flopping on their positions on discovery is a clear delay tactic and only bolsters the concerns raised in the Trustee Motion.

Ad Hoc Group has communicated that not all of their requests require electronic discovery and has committed to negotiate quickly and in good faith to reach a reasonable scope of electronic discovery. Notably, non-public documents relevant to the Trustee Motion and Suspension Motion lie almost exclusively within the Debtors' custody and control. The Debtors are obligated to search and produce such relevant documents. *See Kleppinger v. Texas Dep't of Transportation*, 2012 WL 12893654, at *4 (S.D. Tex. Aug. 23, 2012), *aff'd*, 2013 WL 12137773 (S.D. Tex. Jan. 24, 2013) (noting that "although the ordered searches will likely require [the producing party] to review thousands of e-mails, any risk of overproduction does not outweigh the benefit of finding potentially relevant e-mails that cannot be obtained otherwise"); *NRT Texas LLC v. Wilbur*, 2022 WL 19039614, at *2 (S.D. Tex. Nov. 1, 2022) (compelling the production of responsive documents "regardless of whether they are text messages, social media messages, emails, or some other form" of ESI that has not been produced).

39.     For the same reasons, the Debtors must produce Mr. Wiederhorn and a member of the Special Committee for deposition. These witnesses are central to both the Trustee Motion and the Suspension Motion. Mr. Wiederhorn's pre- and post-petition conduct form the bases for the relief sought in both motions. The Ad Hoc Group is entitled to probe, among other things, the authority granted to and exercised by the Special Committee, a purported safeguard on Mr. Wiederhorn's control, in connection with the Trustee Motion and the Suspension Motion. These are distinct and critical lines of inquiry undeniably within the bounds of permitted discovery under Federal Rule 26.

40.     The Ad Hoc Group respectfully requests that the Court compel the Debtors to comply with their discovery obligations, including undertaking formal document collection efforts

and running searches across custodians' email inboxes and text messages and making Mr. Wiederhorn and a Special Committee member available for deposition.

> **B.      The Debtors' Attempt to Condition Their Production of Relevant Documents and Witnesses on Reciprocal Discovery Is Inconsistent with Their Obligations**

41.      Despite having agreed on February 17, 2026 to conduct searches for responsive emails to avoid a motion to compel, the Debtors have since changed their position.[6]  Now, the Debtors purport to require a reciprocal production of documents and deposition witnesses in an apparent attempt to delay discovery and squeeze the Ad Hoc Group for irrelevant and privileged analyses.  *See* Chase Decl., Exhibit D.  The Parties' discovery obligations are defined by the applicable discovery rules—here, Federal Rule 26, made applicable by Bankruptcy Rule 7026.  Those obligations are not relative to what other parties are responsible for turning over.  *See generally* Fed. R. Civ. P. 26.  Indeed, Federal Rule 26(d)(3) makes clear that, as a general matter, "discovery by one party does not require any other party to delay its discovery."

42.      The only contested matters for which discovery may be properly served relate to the Trustee Motion and the Suspension Motion.  These motions are entirely centered on how the *Debtors* run their business.  *See, e.g.*, 11 U.S.C. § 1104(a)(1) ("[T]he court shall order the appointment of a trustee . . . for cause, including fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor by current management either before or after commencement of the case . . . ").  The Ad Hoc Group's knowledge or analysis of the Debtors' operations are not relevant for determining whether a chapter 11 trustee is proper. *See, e.g.*, *In re*

---

[6]      On February 24, 2026, when confronted about their attempt to renege on their agreement to conduct email searches, Debtors' counsel claimed that, even if not explicit, they implicitly agreed to conduct email searches on the contingent agreement that the Ad Hoc Group would run its own email searches.  No such agreement was ever explicit or implicit.  Debtors' counsel unequivocally agreed on February 17, 2026 to run email searches to avoid litigating the issue.  *See* Chase Decl., Ex. D at 6.  The Parties did not reference—let alone discuss—the Ad Hoc Group's responses to the Debtors' Document Requests prior to a meet and confer on February 24, 2026.

*Reagor-Dykes Motors, LP*, 2021 WL 5094783, at *1 (Bankr. N.D. Tex. Oct. 29, 2021) (noting that discovery "fails the relevance test if it is clear that it could have no possible bearing on the claim" and denying a motion to compel discovery because the requests were overly broad and largely irrelevant); *In re NewStarcom Holdings, Inc.*, 514 B.R. 394, 399–400 (Bankr. D. Del. 2014) (stating that discovery will not be allowed where it "can have no possible bearing upon the subject matter of the action" and holding that the requested discovery was not relevant to the claim at issue in the case). Nor is the price and time at which each Ad Hoc Group member bought their debt, or each members' "policies or practices . . . regarding the use of private aircraft for business purposes." *See* Chase Decl., Ex. E at 12-55. To be clear, the Ad Hoc Group agrees that electronic discovery is a proper form of discovery—but that discovery must also be relevant and proportional to the needs of the contested matters at issue. Here, they are not.

43.     There is no basis to require the Ad Hoc Group to produce documents or deposition witnesses in order to obtain relevant discovery from the Debtors, especially when, as here, those requests are wholly irrelevant to the matters at issue. Courts in this Circuit have repeatedly admonished that such a "tit-for-tat" approach is "unacceptable." *See, e.g.*, *Williams v. Am. Honda Motor Co.*, 2022 WL 1071463, at *2 (E.D. Tex. Apr. 8, 2022), *aff'd*, 2023 WL 3739095 (5th Cir. May 31, 2023) ("'The court does not consider 'tit-for-tat' objections to discovery to be legitimate objections. If the opposing party is recalcitrant in responding to discovery requests, the rules provide a mechanism for compelling responses and/or imposing sanctions. The rules do not authorize one party to withhold discoverable material in retaliation for the opposing party's withholding of discoverable material.' . . . Yet plaintiff will-fully adopted such a tit-for-tat approach. That is unacceptable.") (quoting *Lumbermens Mut. Cas. Ins. Co. v. Maffei*, 2006 WL 2709835, at *5 n. 21 (D. Ala. Sept. 20, 2006)); *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 581

(N.D. Tex. 2018) (collecting cases for the proposition that a party may not "refuse to comply with an opposing party's discovery requests 'simply because he believes that the opposing parties ha[ve] not fully complied with his discovery requests to them.'"); *Brown v. Bridges*, 2014 WL 1317553, at *3 (N.D. Tex. Apr. 2, 2014) ("As an initial matter, Defendant seems to argue that it has agreed to produce responsive documents but only once Plaintiffs first supplemented their discovery responses.  Defendant cannot withhold relevant, responsive documents and discovery responses on these grounds.  To the extent that Defendant has objected to providing responsive documents or failed to 'agree on a date and time for production' on the ground that Plaintiffs have not provided their discovery responses, Defendant's objection is overruled, and Plaintiff's Motion to Compel is GRANTED.") (citations omitted).  And at least one court has granted a motion to compel because "tit-for-tat" approaches to discovery, where another party attempts to "condition its compliance with its discovery obligations on receiving discovery from its opponent," is impermissible.  *Genentech, Inc. v. Trs. of Univ. of Pennsylvania*, 2011 WL 7074208, at *1 (N.D. Cal. June 10, 2011).

44.     Accordingly, the Court should reject the Debtors' attempt to place improper conditions on their compliance with their discovery obligations.  *See Brown*, 2014 WL 1317553, at *3 (granting motion to compel and overruling objection "[t]o the extent that Defendant has objected to providing responsive documents . . . on the ground that Plaintiffs have not provided their discovery responses"); *Lopez*, 327 F.R.D. at 587 (granting motion to compel in part because a party "subject to Rule 26(a)(1) disclosure obligations and served with discovery requests cannot refuse to comply with its disclosure obligations or properly respond to the requests simply because he believes that the opposing party has not fully complied with his discovery requests to them.").

**EMERGENCY RELIEF**

45.     The Ad Hoc Group requests emergency consideration of this Motion.  As explained above, the Trustee Motion and Suspension Motion are set to be heard on March 11, 2026.  The Ad Hoc Group cannot take depositions or prepare their case unless they receive the requested documents sufficiently ahead of that hearing date.  For this reason, conducting a hearing on the Motion on less than 28 days' notice is appropriate under Bankruptcy Local Rule 9013-1, and the Ad Hoc Group respectfully requests that the Court approve the relief requested in this Motion on an emergency basis.

**NOTICE**

46.     Notice of the Motion will be given to: (i) proposed counsel for the Debtors; (ii) the Office of the United States Trustee for the Southern District of Texas; (iii) parties on the Master Service List; and (iv) any other party that, as of the filing of the Motion, has requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.  Under the specific circumstances of these Chapter 11 Cases, the Ad Hoc Group submits that no other or further notice of the Motion should be required.

**CONCLUSION**

The Ad Hoc Group respectfully requests that the Court enter an order:

    i.   compelling the Debtors to comply with their discovery obligations, including undertaking formal document collection efforts and running searches across custodians' email inboxes and text messages;

    ii.  compelling the Debtors to produce all non-privileged, relevant documents, including emails and text messages responsive to the Ad Hoc Group's Document Requests;

iii. compelling the Debtors to make Mr. Mr. Wiederhorn and a member of the Special Committee available for a deposition; and

iv. granting such other and further relief as the Court deems necessary and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated: February 25, 2026
       Houston, Texas

*/s/ Charles R. Koster*
**WHITE & CASE LLP**
Charles R. Koster (Texas Bar No. 24128278)
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Email: charles.koster@whitecase.com


- and -


**WHITE & CASE LLP**
Andrew Zatz (admitted *pro hac vice*)
Laura J. Garr (admitted *pro hac vice*)
Ashley R. Chase (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: azatz@whitecase.com
       lgarr@whitecase.com
       ashley.chase@whitecase.com

**WHITE & CASE LLP**
Brian Pfeiffer (admitted *pro hac vice*)
Amanda Parra Criste (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Email: brian.pfeiffer@whitecase.com
       aparracriste@whitecase.com


- and -


**WHITE & CASE LLP**
Jason N. Zakia (admitted *pro hac vice*)
Adam T. Swingle (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: jzakia@whitecase.com
       adam.swingle@whitecase.com

**<u>Certificate of Accuracy</u>**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Charles R. Koster*
Charles R. Koster

**<u>Certificate of Service</u>**

I certify that on February 25, 2026, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Charles R. Koster*
Charles R. Koster
