IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

----------------------------------------------------------- x
                                                            :
In re:                                                      :   Chapter 11
                                                            :
FAT BRANDS INC., *et al.*,                                  :   Case No. 26-90126 (ARP)
                                                            :
            Debtors.[1]                                     :   (Jointly Administered)
                                                            :
----------------------------------------------------------- x

## DEBTORS' OBJECTION TO MOTION FOR RELIEF FROM STAY

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***")

respectfully submit this objection (this "***Objection***") to the *Motion for Relief from Automatic Stay*

[Docket No. 515] (the "***Motion***") filed by Humberto Jaimes and Angelica Jaimes, individually and

on behalf of all heirs and the estate of Alex Jaimes (together, the "***Movants***").

## PRELIMINARY STATEMENT

1.      The Motion seeks relief from the automatic stay so that Movants may continue their

prosecution of a negligence action (the "***State Court Action***") against Debtor Twin Park North,

LLC ("***Twin Park North***") pending in the District Court of Bexar County, Texas

(the "***State Court***").  The proposed order attached to the Motion (the "***Movants' Proposed Order***")

would limit recovery against Twin Park North to proceeds of applicable insurance that may be

available.  But the bar date in these Chapter 11 Cases has not passed, additional claims covered by

the relevant insurance policy may be forthcoming, and the Debtors respectfully submit that the

liquidation of such claims and the State Court Action is better suited for the claims allowance

---

[1]    A complete list of the Debtors in the Chapter 11 Cases and the last four digits of each Debtor's taxpayer identification number (if applicable) may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/FATBrands-TwinHospitality.  The Debtors' mailing address for purposes of the Chapter 11 Cases is 9720 Wilshire Blvd., Suite 500, Beverly Hills, CA 90212.

process once a chapter 11 plan becomes effective to ensure appropriate and equitable treatment of all similarly situated claimants.

2.      Relief from the automatic stay is inappropriate at this time for two reasons.  *First*, the Debtors believe that claims covered by the applicable insurance policy have an aggregate value that may exceed the available proceeds under such insurance policy.  As a result, the Debtors have an equitable interest in ensuring that those proceeds remain available so that they may be applied to satisfy as many claims as possible—not just one or two.  That interest should remain protected by the automatic stay.  *Second*, the Debtors are focused on facilitating a going-concern sale of their various businesses, maintaining access to debtor-in-possession financing, and commencing the solicitation process for a chapter 11 plan.  Engaging in a defense of the State Court Action will be a distraction from the Debtors' restructuring efforts at this time and liquidation of the Movants' claim against Twin Park North can be deferred until a Plan is effective and the claims allowance process is underway.  Accordingly, the Motion should be denied.

## BACKGROUND

### I.      STATUS OF CHAPTER 11 CASES

3.      On January 26, 2026 (the "***Petition Date***"), the Debtors filed voluntary petitions in the United States Bankruptcy Court for the Southern District of Texas (this "***Court***") commencing cases for relief under chapter 11 of the Bankruptcy Code (collectively, the "***Chapter 11 Cases***"). The Debtors continue to operate their businesses and manage their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  On February 6, 2026, the Office of the United States Trustee for the Southern District of Texas (the "***U.S. Trustee***")

2

appointed an official committee of unsecured creditors (the "***Committee***") [Docket No. 186].  No trustee or examiner has been appointed in the Chapter 11 Cases.[2]

4.      Over the past several weeks, the Debtors' restructuring efforts have primarily revolved around: (i) finalizing the terms of a mediated agreement that effectuated a change of the Debtors' governance [Docket No. 472]; (ii) obtaining and maintaining access to debtor in possession financing ("***DIP Financing***") and use of cash collateral [Docket Nos. 503 & 564]; (iii) establishing the bidding procedures [Docket No. 595] for a sale process pursuant to which the Debtors seek to sell all or substantially all of their assets to one or more purchasers in order to maximize value for their estates (the "***Sale Process***");  and (iv) finalizing and filing their schedules of assets and liabilities and statements of financial affairs (collectively, the "***Schedules and Statements***") so that this Court can set a bar date and the Debtors can, in turn, commence the process of soliciting votes for a plan of liquidation (any such plan, a "***Plan***") to responsibly wind down the Chapter 11 Cases.

## II.      MOTION FOR STAY RELIEF

5.      As set forth in the Plaintiffs' First Amended Original Petition [Docket No. 591, Ex. A] (the "***Complaint***"), Movants seek damages from Debtor Twin Park North and a non-Debtor defendant, Bowlero San Pedro Ave, LLC.  The Complaint alleges that Twin Park North provided alcoholic beverages to a certain individual who caused a motor vehicle accident—resulting in the death of Alex Jaimes.  As attested to in the DiDonato Declaration (as defined below), the parties to the State Court Action have engaged in some discovery but the

---

[2]    The factual background regarding the Debtors, including their business, their capital structure, and the events leading to the commencement of the Chapter 11 Cases, is set forth in the *Declaration of John C. DiDonato in Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 15] (the "***First Day Declaration***"), which is fully incorporated herein by reference.  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

State Court has not ruled on any dispositive questions of law.  *See* DiDonato Decl. ¶ 5.  On January 29, 2026, Twin Park North filed a *Suggestion of Bankruptcy* in the State Court Action, which advised parties in interest of the pendency of the Chapter 11 Cases and the operation of the automatic stay.  The Movants filed the Motion on March 26, 2026, seeking authority from this Court to continue the prosecution of the State Court Action so that they may pursue recovery against Twin Park North's applicable insurance.  *See* Movants' Proposed Order.  The Debtors believe that if the Motion were granted and the stay were lifted, the parties to the State Court Action would not be ready for the summary judgment stage or for trial.  *See* DiDonato Decl. ¶ 5.

### III.    INSURANCE POLICY AND POTENTIAL CLAIMS AGAINST ITS PROCEEDS

6.      Debtor Twin Restaurant Holdings LP holds an insurance policy bearing policy no. TB5-Z11-B9361F-022  (the  "***Policy***")[3]  issued  by  LM  Insurance  Corporation ("***Liberty Mutual***").  The Policy has a general aggregate limit of $5 million.  Of this aggregate limit, the Debtors believe that approximately $3,621,000 of proceeds are available as of the date hereof (any such proceeds, the "***Available Proceeds***").  Over 60 subsidiary entities (in addition to Twin Park North) within the Twin Silo—including numerous Twin Restaurant location-specific entities and their related management and beverage holding companies—are insured under the Policy (the "***Insured Entities***").

7.      In addition to the State Court Action, the Debtors are aware of two other asserted claims (together with the State Court Action, the "***Open Claims***") that may give rise to damages covered under the Policy.  *See* DiDonato Decl. ¶ 8.  The Open Claims seek no less than $3.5 million in alleged damages (in the aggregate) from certain of the Insured Entities.  *Id*.  The Insured Entities

---

[3]     A copy of the Policy is attached to the *Declaration of John DiDonato in Support of Debtors' Objection to Motion for Relief from Stay*, filed contemporaneously herewith (the "***DiDonato Declaration***").

may be entitled to coverage for claims that have yet to be asserted (such unasserted claims together with the Open Claims, "***Covered Claims***") arising during the Policy's period of April 28, 2022, to April 28, 2023. Relatedly, the Debtors have sought approval of a bar date of May 15, 2026 [Docket No. 501], and may learn of additional Covered Claims once the bar date passes. The Available Proceeds are also subject to erosion by any expenditure of defense costs incurred in connection with defending Covered Claims. *See* Paragraph C to Policy's Deductible Endorsement, LC 03 03 06 05.

## OBJECTION

### I.      LEGAL STANDARD

8.      When the aggregate value of claims covered by a debtor's insurance policy exceeds the available policy limits, the debtor possesses an equitable interest in having those proceeds applied to satisfy as many creditor claims as possible. *See Martinez v. OGA Charters, L.L.C. (In re OGA Charters, L.L.C.)*, 901 F.3d 599, 605 (5th Cir. 2018). Such interest is a cognizable property interest under 11 U.S.C. § 541(a). *See id*. Because proceeds of insurance policies are property of the estate in these circumstances, the bankruptcy court should regulate their distribution "so as to maximize their ability both to satisfy legitimate creditor claims and to preserve the debtor's estate." *See id.* at 604–05 (quoting *Tringali v. Hathaway Mach. Co.,* 796 F.2d 553, 560 (1st Cir. 1986)). Such bankruptcy court oversight prevents the distribution of proceeds on a "first-come, first-serve" basis. *See Dunn v. QBE Ins. Corp. (In re Alta Mesa Res., Inc.)*, 2022 Bankr. LEXIS 3508, at *27 (Bankr. S.D. Tex. Dec. 12, 2022).

9.      The automatic stay under section 362 of the Bankruptcy Code applies to actions or proceedings against a debtor or against property of the estate. *See* 11 U.S.C. § 362. In particular, the automatic stay protects against, among other things, (i) "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could

5

have been commenced before the commencement of the case", (ii) "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate, and (iii) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case[.]"   11 U.S.C. § 362(a)(1), (3) and (6).   The automatic stay is particularly important in maintaining the status quo and permitting the debtor in possession to pursue its restructuring objectives.   3 Collier on Bankruptcy ¶ 362.03 (16th ed. 2019).

10.     Although section 362(d) of the Bankruptcy Code authorizes a court to lift the automatic stay for "cause," section 362(d) does not offer guidance as to what constitutes "cause," and the reviewing court must determine whether cause exists on a case-by-case basis.   *See, e.g.*, *In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998); *In re Mosher*, 578 B.R. 765, 772 (Bankr. S.D. Tex. 2017) (explaining that whether "cause" exists is a fact-intensive inquiry "committed to the discretion of the bankruptcy judge . . . that must be determined on a case-by-case basis.").

11.     In determining whether a moving party has shown cause to obtain relief from the stay, bankruptcy courts will often consider a set of twelve factors set forth in *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990).   *See In re Xenon Anesthesia of Texas, PLLC,* 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014) (applying *Sonnax* factors when deciding whether to lift the automatic stay to allow litigation against the debtor to proceed in another forum).   The *Sonnax* factors are:

- whether relief would result in a partial or complete resolution of the issues;
- lack of any connection with or interference with the bankruptcy case;
- whether the other proceeding involves the debtor as a fiduciary;
- whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
- whether the debtor's insurer has assumed full responsibility for defending it;
- whether the action primarily involves third parties;
- whether litigation in another forum would prejudice the interests of other creditors;

- whether the judgment claim arising from the other action is subject to equitable subordination;
- whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
- the interests of judicial economy and the expeditious and economical resolution of litigation;
- whether the parties are ready for trial in the other proceeding; and
- impact of the stay on the parties and the balance of harms.

*See Sonnax* at 1286.

12. Although not all of the *Sonnax* Factors will be relevant in every case, "even slight interference with the administration [of the Debtors' estates] may be enough to preclude relief." *Anderson v. Hoechst Celanese Corp. (In re U.S. Brass Corp.)*, 173 B.R. 1000, 1006 (Bankr. E.D. Tex. 1994), *modified*, 176 B.R. 11 (Bankr. E.D. Tex. 1994); *see also In re W.R. Grace & Co.*, No. 01-01139, 2007 WL 1129170, at \*2 n.7 (Bankr. D. Del. Apr. 13, 2007) ("The most important factor in determining whether to grant relief from the automatic stay . . . is the effect on such litigation on the administration of the estate.") (citation omitted).  Not every possible detriment to the creditor or estate independently justifies lifting the stay.  *In re Omni Lion's Run, L.P.*, 578 B.R. 394, 399 (Bankr. W.D. Tex. 2017).

13. Where an unsecured creditor seeks relief from the automatic stay, such relief is granted only in extraordinary circumstances.  *In re Eagles Enters., Inc.*, 265 B.R. 671, 680 (E.D. Pa. 2001) ("[U]nsecured creditors are entitled to relief from an automatic stay only in extraordinary circumstances."); *In re Stranahan Gear Co.*, 67 B.R. 834, 838 (Bankr. E.D. Pa. 1986) ("Several factors mitigate strongly against the allowance of any relief in this case – in any but the most extraordinary set of circumstances – where the moving party is an unsecured creditor.").

## II. PROCEEDS OF POLICY ARE PROPERTY OF ESTATE

14. As discussed above, the aggregate value of the Open Claims—which seek at least $3.5 million in alleged damages—combined with the potential existence of other Covered Claims

7

and the Policy's eroding nature with respect to defense costs—threaten to exceed the Available Proceeds of approximately $3,621,000. The Debtors therefore have an equitable interest in the Available Proceeds and seek to ensure that the Available Proceeds are distributed in an equitable manner in satisfaction of Covered Claims that become allowed claims. *See In re OGA Charters* at 605. Thus, without relief from the automatic stay, Movants are enjoined from seeking recovery against the Available Proceeds. *See* 11 U.S.C. § 362(a)(3).

### III.  MOVANTS HAVE NOT SATISFIED THEIR BURDEN AND CAUSE DOES NOT EXIST TO LIFT THE AUTOMATIC STAY

15.    Once a bar date has passed and the Debtors know the universe of Covered Claims, the Debtors may seek to establish procedures to provide for the equitable distribution of the Available Proceeds among holders of allowed Covered Claims during the claims allowance process. An examination of the *Sonnax* factors, however, demonstrates that it is inappropriate for the State Court Action to continue at this time. Ten of the factors weigh against relief from the stay, two are inapplicable, and none weigh in favor of granting the Motion.

#### A.    Relief from Stay Would Only Result in Partial Resolution of the Issues.

16.    If Movants are authorized to continue the prosecution of the State Court Action so that they may liquidate their claim and they are successful in obtaining a judgment against Twin Park North, this would only establish the amount of Movants' claim. The portion of the Available Proceeds that can be allocated towards the liquidated claim would still need to be determined by this Court in accordance with *In re OGA Charters*. Rather than expending estate resources on the State Court Action now, Movants' claim—like all other Covered Claims—should be addressed through the claims allowance process once a Plan has become effective and the Debtors have transitioned to winding down their estates. At that point, Movants' claim can be liquidated in the

8

appropriate forum without diverting estate resources from the critical restructuring activities that are currently underway.  This factor weighs against stay relief.

**B.** **Lifting the Stay Would Interfere with the Chapter 11 Cases**.

17. Granting the Motion would result in an unnecessary distraction for the Debtors and management, and their professionals.  As described above, the Debtors are currently at a critical juncture in their restructuring efforts.  The Sale Process is actively underway with an auction scheduled for April 27, 2026.  The Debtors have only obtained DIP Financing on an interim basis and must continue negotiating with the WBS Ad Hoc Group and the Committee to maintain access to the liquidity necessary to fund the Chapter 11 Cases.  Additionally, having filed the Schedules and Statements on April 10, 2026, the Debtors are poised to file a solicitation procedures motion and proposed disclosure statement so that they may commence solicitation for a Plan, all on a constrained budget and limited resources.  Requiring the Debtors and their professionals to divert their attention to defending the State Court Action at this critical moment—when they should be focused on maximizing value for all stakeholders and confirming a Plan—would interfere with the administration of the Chapter 11 Cases.  As discussed above, the claims allowance process under a confirmed Plan will provide an orderly mechanism for the liquidation of Movants' claim in the appropriate forum without interfering with the Debtors' ongoing restructuring activities.  This factor weighs against stay relief.

**C.** **The State Court Action Does Not Involve Any Debtor as a Fiduciary**.

18. Proceedings implicating a debtor solely in a fiduciary capacity generally do not need to be stayed because they do not involve the same type of disruption to the bankruptcy process that the stay addresses.  *See* S. Rep. No. 989, 95th Cong., 2d Sess. 52, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5838.  This is not the case here where the State Court Action asserts a claim for damages against Twin Park North.  This factor weighs against stay relief.

**D.      The State Court Action Is Not Pending in a Specialized Tribunal**.

19.      Stay relief may be appropriate for purposes of allowing claims against the estate to be determined by tribunals with specialized expertise.  *See In re Curtis*, 40 B.R. 795, 800 (Bankr. D. Utah 1984) (collecting cases).  The State Court is not a specialized tribunal but rather a trial court of general jurisdiction.  Thus, this factor weighs against stay relief.

**E.      Liberty Mutual Has Not Assumed Full Responsibility for Defending the State Court Action**.

20.      If Liberty Mutual had assumed full responsibility for defending the State Court Action, then the continuation of the State Court Action would have minimal interference on the Chapter 11 Cases.  This is not the case here.  DiDonato Decl. ¶ 8.  Further, the Available Proceeds are limited in nature and may not be sufficient to cover any judgment entered in the State Court Action and other Covered Claims.  This factor weighs against stay relief.

**F.      The State Court Action Does Not Primarily Involve Third Parties**.

21.      Twin Park North is one of two defendants in the State Court Action.  The disposition of the State Court Action will determine Twin Park North's direct liability (if any) to the Movants.  The State Court Action thus does not primarily involve third parties and this factor weighs against stay relief.

**G.      Litigation of the State Court Action Could Prejudice Other Creditors**.

22.      As described above, costs incurred by the Debtors in connection with defending the State Court Action will erode the Available Proceeds to the direct detriment of holders of other, unknown Covered Claims.  Thus, continuation of the State Court Action without an order from this Court regulating the distribution of the Available Proceeds for relevant Covered Claims will prejudice other creditors.  This factor weighs against stay relief.

**H.**     **The Interests of Judicial Economy Will Not Be Impacted if the State Court Action Remains Stayed at this Time**.

23.     The State Court Action is still in its early stages.  The parties to the State Court Action have engaged in some discovery but the State Court has not ruled on any dispositive questions of law.  As a result, the interests of judicial economy will not be harmed if the State Court Action remains stayed until the earlier of (i) the effective date of a Plan or (ii) such other date that the automatic stay otherwise becomes inoperative as a matter of law.  Deferring resolution of Movants' personal injury claim to the claims allowance process will not prejudice the interests of judicial economy; to the contrary, it will allow this claim to be liquidated at a time when doing so will not compromise the Debtors' restructuring efforts.  This factor weighs against stay relief.

**I.**     **The Parties Are Not Ready for the Summary Judgment Stage or Trial in the State Court Action**.

24.     The State Court Action has not progressed to a point where the Parties are ready for the summary judgment stage or for trial.  Thus, if the Motion is granted, the Debtors will need to expend time and resources on continuing to engage in discovery and preparing summary judgment pleadings or, alternatively, for trial.  Accordingly, continuation of the State Court Action will result in an expenditure of costs and resources by the estates which will only serve the purpose of allowing one of thousands of claims against the Debtors to be liquidated.  This factor weighs against stay relief.

**J.**     **Continuation of the State Court Action Will Harm the Estates Disproportionately Compared to Any Harm Resulting from the Continued Operation of the Automatic Stay**.

25.     The Movants will not be harmed by the continued operation of the automatic stay because their rights as creditors will be preserved through the bankruptcy process.  Movants may file a proof of claim in these Chapter 11 Cases and their claim will be addressed in accordance with the Bankruptcy Code and any confirmed Plan.  Once the Debtors are winding down under an

11

effective Plan, the claims allowance process will be underway and allow for the liquidation of Covered Claims—including Movants' claim.  In contrast, allowing the State Court Action to proceed at this time would impose substantial burdens on the Debtors' estates at a time when the Debtors must devote their full attention and limited resources to executing the Sale Process, maintaining and finalizing DIP Financing, and commencing Plan solicitation.  Moreover, the costs of defending the State Court Action—including attorneys' fees that will further erode the limited Available Proceeds—would compound this harm.  Given that the automatic stay will become inoperative upon the earlier of the effective date of a Plan or as otherwise provided by the Bankruptcy Code, any delay to any rights of the Movants to recover against the Available Proceeds is temporary and does not outweigh the harm that continuation of the State Court Action would cause to the Debtors' estates and other creditors.  This factor weighs against stay relief.

> **K.** **Remaining Factors Are Inapplicable**.

26.     It is unknown whether the State Court Action will result in a judgment against Twin Park North that could become an allowed claim against the Debtors.  Nor is it known whether (a) the Movants might seek a judicial lien for purposes of collecting on any judgment that they obtain in the State Court Action or (b) whether such lien might be avoided.  Further, the State Court Action has not progressed to a point where the Debtors can reasonably ascertain whether there are potentially meritorious claims for equitable subordination that can be asserted against any allowed claim arising from the State Court Action under section 510(c) of the Bankruptcy Code.  Thus, the remaining two *Sonnax* factors are inapplicable at this time.

27.     In sum, the Movants have not satisfied their burden to show that cause exists to lift the stay so that the Movants may recover against the Available Proceeds.  As a result, the Debtors respectfully submit that the Motion should be denied and that the proposed order attached hereto should be entered.

## RESERVATION OF RIGHTS

28.     The Debtors reserve all rights to modify or supplement the legal and factual arguments raised in this Objection on any basis whatsoever, at a future date.  Nothing herein shall be interpreted (a) as an admission that any claim related to the State Court Action is meritorious or valuable or (b) to imply that the State Court Action should be adjudicated in the State Court. The Debtors reserve all rights with respect to the State Court Action and the Policy.

## CONCLUSION

29.     For the reasons set forth herein, the Debtors respectfully request that the Motion be denied.

Dated:  April 16, 2026
       Houston, Texas

Respectfully submitted,

*/s/ Timothy A. ("Tad") Davidson II*

**HUNTON ANDREWS KURTH LLP**
Timothy A. ("Tad") Davidson II (TX Bar No. 24012503)
Ashley L. Harper (TX Bar No. 24065272)
Philip M. Guffy (TX Bar No. 24113705)
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone:  (713) 220-4200
Email:  taddavidson@hunton.com
       ashleyharper@hunton.com
       pguffy@hunton.com

– and –

**LATHAM & WATKINS LLP**
Ray C. Schrock (NY Bar No. 4860631)
Natasha Hwangpo (NY Bar No. 5222575)
Randall Carl Weber-Levine (NY Bar No. 5673330)
Ashley Gherlone Pezzi (NY Bar No. 5754213)
Thomas Fafara (NY Bar No. 6013445)
1271 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 906-1200
Email:  ray.schrock@lw.com
       natasha.hwangpo@lw.com
       randall.weber-levine@lw.com
       ashley.pezzi@lw.com
       thomas.fafara@lw.com

– and –

Ted A. Dillman (CA Bar No. 258499)
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone:  (424) 653-5500
Email:  ted.dillman@lw.com

*Co-Counsel for the Debtors*
*and Debtors in Possession*

14

## CERTIFICATE OF SERVICE

I certify that on April 16, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

*/s/ Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II