**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| FAT BRANDS INC., et al.,[1] | Case No. 26-90126 (ARP) |
| Debtors. | (Jointly Administered) |

**LIMITED OBJECTION OF MACERICH CERRITOS, LLC, MACERICH
VICTORVALLEY, LP, MACERICH VINTAGE FAIRE LIMITED
PARTNERSHIP, REALTY INCOME CORPORATION, SOUTH TOWN
DEVELOPMENT, LLC, SPIRIT MASTER FUNDING IV, LLC, AND WM INLAND
INVESTORS IV, LLC TO DEBTORS' REVISED NOTICE OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AND
ASSIGNED IN CONNECTION WITH THE SALE OF THE DEBTORS' ASSETS
AND THE PROPOSED CURE COSTS WITH RESPECT THERETO**

Macerich Cerritos, LLC, Macerich Victor Valley LP, Macerich Vintage Faire Limited Partnership, Realty Income Corporation, South Town Development, LLC, Spirit Master Funding IV, LLC, and WM Inland Investors IV, LLC (collectively, the "Landlords") by and through their undersigned counsel, hereby make this limited objection and reservation of rights (the "Limited Objection") to *Debtors' Notice (and Revised) of Executory Contracts and Unexpired Leases That May be Assumed and Assigned in Connection With The Sale of The Debtors' Assets and The Proposed Cure Costs with Respect Thereto* [Docket Nos. 599 & 1021], collectively the "Assumption Notice," and respectfully state as follows:

---

[1] A complete list of the Debtors in the Chapter 11 Cases and the last four digits of each Debtor's taxpayer identification number (if applicable) may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/FATBrands-TwinHospitality. The Debtors' mailing address for purposes of the Chapter 11 Cases is 9720 Wilshire Blvd., Suite 500, Beverly Hills, CA 90212.

## PRELIMINARY STATEMENT

1.        The Landlords' objection is borne out in the Debtors' 599-page, later revised, Assumption Notice, wherein the Debtors purports to identify those executory contracts and unexpired leases that may be assumed and assigned, in connection with the potential sale of the Debtors' assets. In doing so, the Debtors propose cure amounts (the "Cure Amounts") to be paid in connection with any assumption and assignment of such contracts and leases are all identified as $0.00. *See* Docket No. 599.

2.        The Cure Amounts set forth in the Assumption Notice do not reflect all outstanding balances due and owing to the Landlords under the respective Leases, and do not account for accruing but unbilled charges which may come due in the future. The Cure Amounts set forth by the Debtors must be modified to reflect additional charges owing, including outstanding taxes, as well as recognize the liability for accruing charges due under the Leases, as set forth herein.

3.        Landlords file this Limited Objection to reserve all of their rights to assert cure amounts that the Landlords would otherwise be entitled to, and to preserve all of their objections to the assignment of any Lease until such time as an agreement is reached on the form of the proposed assignment order.  Notwithstanding the filing of this Limited Objection, however, Landlords remain willing to continue to work with the Debtors in relation to the potential assumption and assignment; and any order related thereto.

## BACKGROUND

4.        FAT Brands, Inc., Twin Hospitality Group, Inc. and their affiliated entities (collectively the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on January 26, 2026 (the "Petition Date").  The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[2]

---

[2] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

5.       On February 6, 2026 the unsecured creditor committee was appointed [Docket No. 186].

6.       On March 12, 2026, Debtors filed their *Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures For Sale of Debtors' Assets, (B) Establishing Procedures for Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Herewith, (C) Scheduling Dates for an Auction and a Hearing to Consider Approval of any Resulting Sale, (D) Approving Form and Manner of Notices Related Thereto, And (E) Granting Related Relief; And (II) (A) Approving and Authorizing Sale of Debtors' Assets Free and Clear of All Claims, Liens, Liabilities, Rights, Interests, And Encumbrances, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (the "Motion") [Docket No. 420].

7.       On April 9, 2026, the Court entered the Bid Procedures Order, which, among other things, approved the Bidding Procedures and procedures for (i) filing objections to the Proposed Sale and (ii) providing notice to lease counterparties of assumption and assignment of any unexpired leases in connection with the Proposed Sale [Docket No. 595].

8.       Subsequent to the Assumption Notice, on April 22, 2026, the Debtors filed a Revised Assumption Notice [Docket No. 1021].

9.       The Debtors lease space from Landlords pursuant to unexpired non-residential real property leases (individually, a "Lease," and collectively, the "Leases") at the locations utilized as Fazoli's, Hot Dog on a Stick ("HDOS"), Smokey Bones, and Twin Peaks (the "Premises") set forth on the attached Exhibit "A."

10.      A portion of the Premises are subject to a master lease (i.e., Smokey Bones), while other premises are single site leases (i.e. Fazoli's). Further, some of the Premises are located within "shopping centers" as that term is used in § 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

11.     Since the filing of the Notice of Assumption, the Debtors have filed Notices of Successful Bidders in relation to the following brands: (i) Hot Dog on a Stick (ii) Round Table (iii) Elevation Burger, and (iv) Twin Peaks. [Docket Nos. 1103 through 1106].

## OBJECTION

### A.     The Debtors Must Provide for Cure of All Existing Defaults under the Lease.

12.     To assume and assign a lease, the Debtors must comply with Section 365(b)(1) of the Bankruptcy Code which provides that:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A)     cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph. . .

U.S.C. § 365(b)(1).

13.     The Landlords respective cure amounts are included in Exhibit "A."[3]

14.     The Landlords object to the Proposed Cure Amounts to the extent that they do not reflect the correct cure amounts for the Leases as of the date of assumption (the "Correct

---

[3] Cure Amounts, as set forth in Exhibit A, do not include any charges that are billed or will come due after the filing of this Objection or charges that are billed directly to the Debtors, including, real estate taxes. To the extent Landlords are later billed for any amount due to the Debtors' failure to pay, Landlords reserve the right to amend the Objection to include such amounts. The Debtors must timely pay all rent and other lease obligations as they come due under the respective lease, and Landlords reserve the right to payment (and to amend this Objection to the extent necessary) for any amounts that come due under the respective Lease through the date of any assumption and assignment and cure payment.

Cure Amounts"). The Proposed Cure Amounts and the Correct Cure Amounts, <u>exclusive</u> of (i) attorneys' fees and (ii) accrued rent and charges and indemnity obligations, are as listed on Exhibit "A" hereto.

15.     The Debtors must cure or provide adequate assurance that they will promptly cure all monetary and most non-monetary defaults. This requirement is essential for the assumption of an unexpired lease. *See In re Senior Care Ctrs., LLC*, 607 B.R. 580, 588 (Bankr. N.D. Tex. 2019); *In re IYS Ventures, LLC*, 659 B.R. 308, 322 (Bankr. N.D. Ill. 2024). Thus, if the Debtors determine to assume and assign any of the Leases the assumption and assignment must include the obligations under the respective Lease to be assumed and assigned.

16.     If a debtor chooses to assume an unexpired lease where there has been a default, it must do three things: (1) cure or provide adequate assurance that it will promptly cure all monetary and most non-monetary defaults, (2) compensate, or provide adequate assurance that it will promptly compensate, the non-debtor party to the lease for any actual pecuniary losses related to the default, and (3) provide adequate assurance of future performance under the lease. 11 U.S.C. § 365(b)(1); *In re Bourbon Saloon, Inc.*, 647 Fed. App'x. 342, 344–45 (5th Cir. 2016).

17.     The Debtors must take the potential lease to be assumed and assigned *cum onere*—subject to existing burdens. The Debtors cannot assume the favorable portions, and reject the unfavorable provisions, of their leases. *In re Wash. Capital Aviation & Leasing,* 156 B.R. 167, 172 (Bankr. E.D. Va. 1993). If forced to continue in the performance of the Lease, Landlords are entitled to the full benefit of the bargain under the Lease with the Debtors. *See Matter of Superior Toy and Mfg. Co., Inc.*, 78 F.3d 1169 (7th Cir. 1996). In addition to curing defaults, the Debtors must provide adequate assurance of future performance under the lease. This includes compliance with both monetary and non-economic terms of the lease. *Senior Care Ctrs.*, 607 B.R. at 588; *In re Rachels Indus., Inc.*, 109 B.R. 797, 813 (Bankr. W.D. Tenn. 1990). Adequate assurance of future performance is

required to protect the landlord's interest in receiving the benefit of its bargain and being protected against default by the debtor after assumption has occurred. *In re Patriot Place, Ltd.*, 486 B.R. 773, 801 (Bankr. W.D. Tex. 2013). The Debtors must demonstrate financial stability and the ability to comply with future obligations, such as maintaining the property and adhering to city code requirements. *Rachels Indus.,* 109 B.R. at 813.  The Debtors must also compensate, or provide adequate assurance that they will promptly compensate, Landlords for any actual pecuniary losses related to the default. *Senior Care Ctrs.*, 607 B.R. at 588. As such, the Debtors' cure amounts must include all prepetition and post-petition arrearages owed to Landlords upon assumption and assignment of the Lease.

### i.     *Attorneys' Fees Costs and Interest.*

18.     Landlords have incurred pecuniary losses through attorneys' fees and costs for having to defend their rights under the Leases wherein the respective Leases contain provisions for recovery of attorneys' fees and costs.

19.     The Landlords further object to the Proposed Cure Amounts because they do not include attorneys' fees.  The Leases entitle the Landlords to attorneys' fees.  Therefore, attorneys' fees must be included as part of the Landlords' cure amounts as pecuniary losses suffered as a result of the Debtors' defaults, under section 365(b)(1)(B).  *See In re Crown Books Corp*., 269 B.R. 12, 18 (Bankr. D. Del. 2001); *In re Williams*, Case No. 10-11108, 2011 Bankr. LEXIS 2463, at *3 (Bankr. D. Del. June 24, 2011); *see also In re French*, 131 B.R. 138, 141 (Bankr. E.D. Miss. 1991); *Urban Retail Props. v. Loews Cineplex Entm't Corp.*, Case No. 01 Civ. 8946, 2002 U.S. Dist. LEXIS 6186, at *25-28 (S.D.N.Y. Apr. 8, 2002); *In re Shangra-La, Inc.*, 167 F.3d 843, 849 (4th Cir. 1999); *In re Entertainment, Inc.*, 223 B.R. 141, 152-53 (Bankr. N.D. Ill. 1998).

20.     Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are proper components of a cure claim, and the Debtors must satisfy these lease charges as part of the assumption of a Lease. *See Senior Care Ctrs.,* 607 B.R. at 593; *In re Entm't, Inc.*, 223 B.R. 141, 152 (Bankr. N.D. Ill. 1998). For example,

in the *Senior Care Centers* case, the court held that, even assuming that attorney fee provisions in master agreements governing the commercial leases that chapter 11 debtors sought to assume were in the nature of "prevailing party" attorney fee provisions, the debtors' success in persuading the bankruptcy court to allow them to assume leases did not preclude the award of attorney fees as part of the "cure" amounts that debtors would have to pay as a prerequisite to assuming leases, given that landlords were successful in compelling debtors to decide whether to assume leases, raising significant issues with regard to debtors' ability to promptly cure defaults, and in generally ensuring that their interests were adequately protected. *Senior Care Ctrs.*, 607 B.R. at 593.

21.     Attorneys' fees have been accruing and will continue to increase through any assumption and assignment of the Leases, and the Landlords may seek to supplement this Objection by the time of any proposed assumption and assignment with the current amount of accrued attorneys' fees.

22.     There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. *In re Entm't, Inc.*, 223 B.R. at 154.   The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude the recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay). *Id.*; *see also In re Crown Books Corp.*, 269 B.R. 12, 16 (Bankr. D. Del. 2001) (landlord's fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); *Urban Retail Props. v. Loews Cineplex Entm't Corp.*, 2002 WL 5355479, at *9 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition . . . ."); *Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated)*, 167 F.3d 843, 850 (4th Cir. 1999). The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition

attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law. *Travelers Cas. & Sur. Co. Of Am. v. Pac. Gas & Elec.*, 49 U.S. 443, 452–53 (2007).

ii.     *Year-End Adjustments and Reconciliations*.

23.     In addition to rent and related monthly charges, attorneys' fees, costs and interest, some charges for which the Debtors bear responsibility under the Leases have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods. The Debtors pay fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like. Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts estimated and paid against actual charges incurred at the Premises. In some instances, year-end reconciliations and adjustments for previous years for the Property may not yet be complete (i.e., year-end reconciliations and adjustments that accrue through 2025 may not yet have been billed). Since these accrued, but unbilled, charges are not yet due under the Leases, they do not create a current default that gives rise to a requirement of cure by the Debtors currently.

24.     Nevertheless, Debtors remain responsible for all accrued or accruing charges under the Leases and must pay such charges when they come due under the Leases. The Debtors (or prospective purchaser) assume the Leases subject to their terms and must assume and assign all obligations owing under the Leases, including obligations that have accrued but may not yet have been billed under the Leases. Any final assumption or sale order should clearly state that the Debtors (or any successful bidders) will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, a prospective closing date or effective date.

iii.     *Preservation of Indemnification*.

25.     Debtors have requested that the proposed sale will be "free and clear." Such broad inclusion of language improperly limits obligations provided for under the leases. The

Leases require the Debtors (or any successful bidder) to indemnify and hold the Landlords harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Leases, examples of which may include such claims as personal injuries at the Premises and damage to the Premises by the Debtors, the successful bidder, or their agents.  Any assumption and assignment of the a Lease must be subject to the terms of the Lease, including the continuation of all indemnification obligations, regardless of when they arose.[4]  In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Leases for any claims that relate to the period prior to assumption or assumption and assignment of the Leases.  Nothing in any assumption or sale order should preclude the Landlords from pursuing the Debtors, their insurance, or any other party that may be liable under the Leases, and the Landlords request that any order specifically preserve their right to pursue such rights irrespective of any resolution of cure amounts herein.

### B.      The Cure Amounts Only Serve as Estimates

26.     Landlords can only provide the information presently available regarding amounts that the Debtors owe, while reserving the right to amend this Objection as necessary to include any additional or unknown charges that arise, including but not limited to, subsequent rent defaults, attorneys' fees, costs, interest, taxes, and year-end adjustments and reconciliations. There is no basis to impose upon the Landlords the equivalent of an administrative bar date, limiting their recourse to recover charges to which they are entitled under the Leases.

### C.      Adequate Assurance of Future Performance

27.     The Debtors may not assume and assign a Lease unless they demonstrate adequate assurance of future performance. 11 U.S.C. § 365(b)(1)(C); *see also* 11 U.S.C. § 365(f)(2). The provision of adequate assurance of future performance is an affirmative duty

---

[4]  Any ability to assume and assign the Leases is subject to the protections provided by Section 365(b) and (f).  Therefore, any assumption must be in accordance with all provisions of the Leases.

of the Debtors, and the Debtors bear the ultimate burden of persuasion as to issues under Section 365. *See In re Rachels Indus.,* 109 B.R. at 802; *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985). The obligation to comply with Section 365(b) and Section 365(f) is unaffected by the assumption and assignment process taking place through a sale under Section 363.

28.     The Fifth Circuit has determined that what constitutes adequate assurance of future performance is "extremely fact-specific." *Patriot Place*, 486 B.R. at 801 (citing *In re Texas Health Enters. Inc.*, 72 Fed. App'x. 122, 126 (5th Cir. 2003)). Courts consider factors such as "(1) whether the debtor's financial data indicates its ability to generate an income stream sufficient to meet its obligations; (2) the general economic outlook in the debtor's industry; and (3) the presence of a guarantee." *Id.* (citing *Richmond Leasing Co.*, 762 F.2d at 1310). Other additional factors examined by courts include "(1) the debtor's payment history; (2) presence of a security deposit; (3) evidence of profitability; (4) plan that would earmark money exclusively for the landlord; and (5) whether the unexpired lease is at, or below, the prevailing rate." *Id.* (citation omitted). *See e.g.*, *In re PRK Enterprises, Inc.*, 235 B.R. 597, 602 (Bankr. E.D. Tex. 1999) (noting debtor had the financial capability to make payments to cure arrearages with a combined net profit of $5,911.00 per month following payments of all expenditures and aggregated monthly rental amount owed to landlord); *In re Brown*, No. 05-55925-NPO, 2006 WL 2546824, *4–5 (Bankr. S.D. Miss. Sept. 1, 2006) (finding that the debtor had made all lease payments since the filing of the petition, hired new management, sought financial advice from a qualified financial advisor and streamlined his business operations); *Coors of N. Mississippi, Inc.*, 27 B.R. 918, 922 (Bankr. N.D. Miss. 1983) (holding that the three-year cure period would be comparatively short to the prospective longevity of the successful business operation and debtors demonstrated "outstanding financial strength and integrity"). Thus, the Debtors ultimately bear the burden of proof that it gave "adequate assurance." *Texas Health Enters.*, 72 Fed. App'x. at 126 (citing *Rachels Indus.*, 109 B.R. at 802).

29.     Here, the Landlords have not received any adequate assurance information from such other bidders. Landlords reserve their right to raise any objections if and when they receive such information as to adequate assurance.

## JOINDER

30.     Landlords hereby join in the objections filed by the Debtors' other landlords and creditors to the extent that such objections are not inconsistent with the provisions hereof.

## RESERVATION OF RIGHTS

31.     Landlords reserve all rights to (i) raise further or other objections as may be necessary to the assumption or assumption and assignment of the Leases, and to the final form of order approving the sale and any assumption and assignment of the Leases and/or to the final transaction documents once such final documents are filed of record with the Court; (ii) to require payment of all lease charges and compliance with all lease terms; and (iii) to require any assignment on a form acceptable to the respective Landlord.

## CONCLUSION

WHEREFORE, Landlords respectfully request that the Bankruptcy Court grant relief consistent with the foregoing Limited Objection and Joinder.

/ / /

/ / /

11

Dated: April 29, 2026

Respectfully submitted,

/s/ Joel F. Newell
Craig Solomon Ganz (TX Bar No. 24127203)
Joel F. Newell (TX Bar. No. 24137409)
Matthew C. Walker, Esquire
**BALLARD SPAHR LLP**
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: 602.798.5400
Facsimile: 602.798.5595
E-mail: ganzc@ballardspahr.com
          newellj@ballardspahr.com
          walkerm@ballardspahr.com

-and-

Leslie C. Heilman, Esquire
Laurel D. Roglen, Esquire
Margaret A. Vesper, Esquire
Erin L. Williamson, Esquire
**BALLARD SPAHR LLP**
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801-3034
Telephone: 302.252.4465
Facsimile: 302.252.4466
E-mail: heilmanl@ballardspahr.com
          roglenl@ballardspahr.com
          vesperm@ballardspahr.com
          williamsone@ballardspahr.com
-and-

Dustin P. Branch, Esquire
Nahal Zarnighian, Esquire
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4354
Facsimile: 424.204.4350
E-mail:  branchd@ballardspahr.com
          zarnighiann@ballardspahr.com

*Counsel to Macerich Cerritos, LLC, Macerich Victor Valley LP, Macerich Vintage Faire Limited Partnership, Realty Income Corporation, South Town Development, LLC, Spirit Master Funding IV, LLC, and WM Inland Investors IV, LLC*

12

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 29, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that the foregoing document is being served this day on all counsel of record and interested parties identified on the attached Service List via CM/ECF, to those registered to receive Notices of Electronic Filing generated by CM/ECF.

*/s/ Joel F. Newell*
Joel F. Newell (TX Bar. No. 24137409)
**BALLARD SPAHR LLP**
